United States District Court
Southern District of Texas
**ENTERED**
March 29, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SOLUGEN INC, | § | CIVIL ACTION NO. |
| Plaintiff, | § | 4:19-cv-01658 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| M3 CHEMICAL GROUP | § | |
| LLC and JAMES | § | |
| MULLOY, | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION
GRANTING MOTION FOR JURY TRIAL**

The motion by Plaintiff Solugen, Inc for jury trial pursuant to Rule 39 of the Federal Rules of Civil Procedure is granted.

1.   Background

Solugen is a Houston-based chemical manufacturer. Defendant M3 Chemical Group, LLC is a Tennessee limited liability corporation headquartered in Nashville. They entered into a consulting agreement in May 2018 and amended that agreement in August 2018. See Dkt 40 at ¶¶ 15, 21.

Defendant James Mulloy is M3's sole member. Solugen alleges that the amended agreement required him to personally create a new biocide product and to subregister biocides from other companies. Id at ¶¶ 11–17. Solugen asserts that Mulloy failed to meet a number of milestones within certain phases outlined in the amended agreement. Id at ¶¶ 22–44, 73–74. It also asserts that Mulloy otherwise breached the confidentiality and noncompete provisions within the agreement. Id at ¶¶ 45–70.

At issue here is simply whether trial will be to a jury or to the bench. The pertinent pleadings reflect an escalating cascade of claims, counterclaims, answers, and amendments.

Solugen filed its initial complaint solely against M3 in May 2019, raising claims for breach of contract and fraudulent inducement. Dkt 1. It made no jury demand. M3 answered in July 2019 and brought counterclaims for breach of contract and declaratory judgment. Dkts 15, 16. Solugen answered the counterclaims. Dkt 23.

Solugen then filed a first amended complaint in August 2019, again solely against M3. Dkt 24. That complaint reiterated the breach-of-contract and fraudulent-inducement claims, while adding another for declaratory judgment. It again made no jury demand. M3 answered later that month and maintained its counterclaims. Dkt 26.

M3 then moved in March 2020 to bring amended counterclaims based on the same causes of action. Dkts 34, 36. Solugen that same day itself moved for leave to file a second amended complaint and an amended answer to M3's amended counterclaims. Dkt 37. Both motions were granted. Dkts 38, 39. The amended counterclaims were deemed filed, as M3 had already docketed them. See Dkt 36. Solugen filed its second amended complaint later in March 2020. See Dkt 40. It added Mulloy as a party defendant, while also bringing additional claims. Solugen now asserts claims against both M3 and Mulloy for breach of contract, fraudulent inducement, declaratory judgment, money had and received, and promissory estoppel. And this time, Solugen demanded a jury trial.

Solugen later filed an amended answer to M3's counterclaims. Dkt 41. But M3 again amended its breach of contract and declaratory judgment counterclaims, to which Solugen filed a further amended answer. Dkts 42, 48. And M3 and Mulloy recently filed a further amended answer to the second amended complaint in March 2021. Dkt 115.

Solugen filed the subject motion for jury trial in April 2020. Dkt 45.

### 2. Legal standard

This order issues as the COVID-19 pandemic appears now at last to be relaxing its grip, at least somewhat, in Texas and across the country. Jury trials—both civil and criminal—were halted due to health exigencies arising from a communicable

disease capable of transmission between persons spending substantial periods of time in close proximity. For example, see General Order No 2020-3, CARES Act Authorization for Video and Audio Conferencing in Criminal Proceedings (Mar 30, 2020). Calling jurors to service simply wasn't possible until the phenomenon was better understood and brought under control.

The last jury trial completed in the Houston Division prior to mandated lockdowns occurred just over one year ago, with a verdict rendered on March 20, 2021. See *Legacy Separators LLC v Halliburton Energy Services Inc et al*, No 4:14-cv-02081 (Judge Andrew Hanen). Several others were halted midtrial at that time. A series of general orders has since delayed recommencement in cautious steps with an eye towards now-familiar tracking statistics on positive-test trends, hospital and ICU capacity, and, sadly, mortality rates. For example, see Special Order No H-2020-09, In re: Court Operations in the Houston and Galveston Divisions Under the Exigent Circumstances Created by the COVID-19 Pandemic (April 3, 2020) (postponing criminal and civil jury trials at least until May 31, 2020). Attempts to proceed were made in the Fall of 2020, with three jury trials of short duration accomplished in October and November. But deteriorating statistics amidst a notable surge brought that to a halt.

With several vaccines created and deployed with astonishing speed, Texans began receiving "shots in arms" in December of 2020, prioritized to the elderly, essential workers, and the infirm. See Texas Department of State Health Services, News Release of December 14, 2020. And Governor Greg Abbott has now announced that vaccinations for all Texans over the age of sixteen commences this day, March 29, 2021. See Texas Department of State Health Services, News Release of March 23, 2021. As such, and if present trends continue, the Houston Division of the Southern District of Texas will again begin calling prospective jurors for trial service as of May 10, 2021. See Special Order No H-2021-11.

The temporary suspension of the ability to proceed with jury trials isn't the most substantial of the many hardships endured during these times. Far from it. But it is one of them. A discussion of background principles is appropriate. What's more, it provides

3

necessary context by which to properly discern the validity of the late demand for jury trial by Solugen in this action.

      a.   Background principles

The Seventh Amendment to the United States Constitution states, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." *Suits at common law* refers to those actions, as here, "in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, SA v Nordberg*, 492 US 33, 41 (1989) (emphasis in original), quoting *Parsons v Bedford*, 28 US 433, 447 (1830) (Story, J).

This right to jury trial in civil matters had existed for centuries in the English legal tradition, long prior to our own Constitution. Sir William Blackstone published his *Commentaries on the Laws of England* in four volumes commencing in 1765, quite proximate to the American Revolution. He there traced origin of the right to Magna Carta in 1215 and times earlier, noting that establishment and use of jury trial "was always so highly esteemed and valued by the people, that no conquest, no change of government, could ever prevail to abolish it." Sir William Blackstone, 3 *Commentaries on the Laws of England* 350 (reprinted by Robert Bell, 1st American ed 1772). Even if the ultimate first roots are obscured, he observed that "the more it is searched into and understood, the more it is sure to be valued," while further describing the right to trial by jury as "the glory of the English law" and "the most transcendent privilege which any subject can enjoy or wish for, that he cannot be affected, either in his property, his liberty, or his person, but by the unanimous consent of twelve of his neighbors and equals." Id at 350, 379; see also Hon Jennifer Walker Elrod, *W(h)ither The Jury? The Diminishing Role of the Jury Trial in Our Legal System*, 68 Wash & Lee L Rev 3, 7 (2011).

When ratified, the Constitution guaranteed the right of jury trial only in criminal matters. US Const Art I, § 2, cl 3. James

Wilson explained during the ratification debates that similar guarantee didn't obtain in civil cases because of a lack of uniformity among the states, making it "therefore impracticable, on that ground, to have made a general rule." James Wilson, State House Speech (Oct 6, 1787), as published in 4 *The Founders' Constitution* 392 (Philip B. Kurland & Ralph Lerner, eds, 1987). But it was the very expression of this guarantee in criminal causes that engendered Anti-Federalist concern of its implied exclusion or outright abolishment in civil causes. For example, see Federal Farmer, no 4 (Oct 12, 1787), as published in 5 *The Founders' Constitution* at 354; Cincinnatus, no 2 (Nov 8, 1787), as published in 4 *The Founders' Constitution* at 394–95. And the writing of Federal Farmer perhaps captures best what was feared might be lost:

> The jury trial, especially politically considered, is by far the most important feature in the judicial department in a free country; and the right in question is far the most valuable part, and the last that ought to be yielded, of this trial. Juries are constantly and frequently drawn from the body of the people, and freemen of the country; and by holding the jury's right to return a general verdict in all cases sacred, we secure to the people at large, their just and rightful controul in the judicial department. If the conduct of judges shall be severe and arbitrary, and tend to subvert the laws, and change the forms of government, the jury may check them, by deciding against their opinions and determinations, in similar cases. It is true, the freemen of a country are not always minutely skilled in the laws, but they have common sense in its purity, which seldom or never errs in making and applying laws to the condition of the people, or in determining judicial causes, when stated to them by the parties. The body of the people, principally, bear the burdens of the community; they of right ought to have a controul in its important concerns, both in

making and executing the laws, otherwise they may, in a short time, be ruined. Nor is it merely this controul alone we are to attend to: the jury trial brings with it an open and public discussion of all causes, and excludes secret and arbitrary proceedings. This, and the democratic branch in the legislature, as was formerly observed, are the means by which the people are let into the knowledge of public affairs—are enabled to stand as the guardians of each others rights, and to restrain, by regular and legal measures, those who otherwise might infringe upon them. I am not unsupported in my opinion of the value of the trial by jury; not only British and American writers, but [Jean-Louis] De Lo[l]me, and the most approved foreign writers, hold it to be the most valuable part of the British constitution, and indisputably the best mode of trial ever invented.

Federal Farmer, no 15 (Jan 18, 1788), as published in 4 *The Founders' Constitution* at 397.

There can be no doubt that all voices on the issue acknowledged the fundamental nature of this right—even those favoring ratification of the Constitution without modification as received from the Convention. Indeed, Alexander Hamilton observed, in *The Federalist*, no 83, "The friends and adversaries of the plan of the convention, if they agree in nothing else, concur at least in the value they set upon the trial by jury; Or if there is any difference between them it consists in this: the former regard it as a valuable safeguard to liberty; the latter represent it as the very palladium of free government." *The Federalist* 562 (Wesleyan 1961) (Jacob E. Cooke, ed).

The sentiment to ratify as-is prevailed. This left it to the First Congress to make and propose improvements (in this and other regards) necessary to allay the fears of those opposed to ratification. This James Madison did when he moved that Congress towards the Bill of Rights, with his first iteration of the Seventh Amendment being, "In suits at common law, between

man and man, the trial by jury, as one of the best securities of the rights of the people, ought to remain inviolate." House of Representatives, Amendments to the Constitution (June 8, 1789) (comments of James Madison), as published in 5 *The Founders' Constitution* at 26. Revisions eventually brought forth the now-enduring formulation of the Seventh Amendment, as ratified in December of 1791.

Given this primacy, one Pennsylvania federal court observed almost immediately after, "The right of trial by Jury is a fundamental law, made sacred by the Constitution, and cannot be legislated away." *Vanhorne's Lessee v Dorrance*, 2 US 304, 309 (Pa Cir Ct 1795). Writing for the Supreme Court in *Parsons v Bedford*, Justice Joseph Story likewise stated that "trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy." 28 US at 446. And further, in his *Commentaries on the Constitution*, Justice Story added, "Still it is a most important and valuable amendment; and places upon the high ground of constitutional right the inestimable privilege of a trial by jury in civil cases, a privilege scarcely inferior to that in criminal cases, which is conceded by all to be essential to political and civil liberty." Joseph Story, 3 *Commentaries on the Constitution of the United States* § 1762 at 633 (Brown, Shattuck and Co 1833), quoting *The Federalist*, no 83.

The Supreme Court in more modern times has regularly reaffirmed that the "right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen whether guaranteed by the Constitution or provided by statute should be jealously guarded by the courts." *Jacob v New York City*, 315 US 752, 752–53 (1942); see also *Beacon Theatres v Westover*, 359 US 500, 501 (1959) (citations omitted); *Colgrove v Battin*, 413 US 149, 152–53 (1973) (citations omitted); *Chauffeurs, Teamsters & Helpers, Local No 391 v Terry*, 494 US 558, 564 (1990) (citations omitted).

b. Protections under Rules 38 and 39

Rule 38(a) of the Federal Rules of Civil Procedure specifically addresses this fundamental right. It provides, "The right of trial

by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." But *inviolate* doesn't mean *automatic*. A respected treatise observes that the "right to jury trial preserved by the Seventh Amendment to the Constitution and embodied in Federal Rule 38(a) is not self-enforcing." Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2318 (West 4th ed October 2020 Update). And so, Rule 38(b) requires a party to make a written demand for a jury trial and serve such demand on the opposing party between the filing of the complaint and fourteen days after the service of the last pleading directed to the issue triable by a jury.

But even where not originally claimed by a party, a jury trial may still be proper. Rule 39(b) provides, "Issues on which a jury trial is not properly demanded are to be tried by the court. But the court may, on motion, order a jury trial on any issue for which a jury might have been demanded." This rule grants considerable discretion to the district court. And "when a demand has been made, though untimely, it is not reversible error for the district court to exercise its discretion under Rule 39(b)." *Swofford*, 336 F2d 406, 409 (5th Cir), cert denied, 379 US 962 (1964) (citation omitted); see also *Bush v Allstate Insurance Co*, 425 F2d 393, 396 (5th Cir) (citations omitted), cert denied, 400 US 833 (1970)

It is both clear and unsurprising that the exercise of this discretion is weighted in favor of preserving the right to jury trial. Indeed, the Fifth Circuit admonishes, "Technical insistence upon imposing a penalty for default [under Rule 38] by denying a jury trial is not in the spirit of the rules." *Daniel International Corp v Fischbach & Moore, Inc*, 916 F2d 1061, 1066 (5th Cir 1990) (quotation omitted). It further holds that "when the discretion of the court is invoked under Rule 39(b), the court should grant a jury trial in the absence of strong and compelling reasons to the contrary." *Swofford*, 336 F2d at 409 (citation omitted). And the following factors are pertinent to the exercise of this discretion:

- o *First,* whether the case involves issues which are best tried to a jury;

- o *Second,* whether granting the motion would result in a disruption of the court's schedule or that of an adverse party;
- o *Third,* the degree of prejudice to the adverse party;
- o *Fourth,* the length of the delay in having requested a jury trial; and
- o *Fifth,* the reason for the movant's tardiness in requesting a jury trial.

*Daniel International Corp*, 916 F2d at 1064 (citations omitted).

This isn't a simple "tally" of the factors with grant or denial depending upon the count. *Bell v General American Life Insurance Co*, 2014 WL 815382, *2 (ND Tex). District courts must instead consider "all the factors holistically, keeping firmly in mind the Seventh Amendment fundamental right of trial by jury." Ibid, citing *Farias v Bexar County Board of Trustees for Mental Health Mental Retardation Services*, 925 F2d 866, 880 (5th Cir 1991) (Clark, CJ, dissenting). They also "ought to approach each Rule 39(b) application with an open mind and an eye to the factual situation in the particular case before it." Wright & Miller, *Federal Practice and Procedure* § 2334.

3.    Analysis

Solugen asserts that its jury demand is proper under Rule 38 of the Federal Rules of Civil Procedure because its second amended complaint and amended answer to M3's counterclaims raise new issues. Dkt 45 at 6–11. M3 and Mulloy argue that the motion under Rule 38 should be denied because the claims in the second amended complaint turn on "the same matrix of facts" that informed the first two complaints, and that raising claims against Mulloy didn't raise any new issue. Dkt 49 at 12–17.

The jury demand under Rule 38 needn't be addressed, although the war-by-amendment strategy engaged in by both parties (as procedurally recounted above) would suggest that new issues have continually been injected into this case. Regardless, Solugen also moves for jury trial pursuant to Rule 39. The motion may be resolved on that basis according to the five factors from *Daniel International.*

*As to the issues involved.* This is an action for breach of contract. It is naturally well-suited for consideration by a jury. This is so in every contract action—unless the given contract is so clear and dispositive as to resolve the dispute as a matter of law. See *Harrison Co v A-Z Wholesalers, Inc,* 2020 WL 918749, \*5 (ND Tex), quoting *Daniel International,* 916 F2d at 1064; *Centerboard Securities, LLC v Benefuel, Inc,* 2016 WL 4207985, \*2 (ND Tex) (citation omitted). And the positions of the parties here plainly indicate that trial will be necessary to determine the issue of breach.

*As to scheduling.* All deadlines in this case are presently stayed pending resolution of this issue and entry of a further order. Dkt 112. This followed from joint motion by the parties to stay deadlines to submit the joint pretrial order and motions *in limine.* Dkt 111. Ordering jury trial will entail no disruption of schedules.

*As to prejudice to the party opposing jury trial.* M3 and Mulloy argue that they would be prejudiced by a jury trial because they "made important strategic decisions expecting a bench trial." Dkt 49 at 19. For instance, they note that M3 voluntarily dismissed an action it brought against Solugen in a Tennessee federal court because it expected that this one "would be tried to a federal judge, not a jury in Solugen's hometown." Ibid. This might have some force if there were a stipulation or written agreement that trial here would be to the bench. But there's not. And M3 hasn't proceeded as if the pleadings were somehow locked in amber. It has repeatedly amended its own counterclaims and answers after dismissing the Tennessee action. See Dkts 36, 42, 115.

M3 and Mulloy also claim that they didn't videotape the depositions of Solugen's cofounders because they anticipated a bench trial. Dkt 49 at 19. But facts are facts, and the burden of proof doesn't change depending on where a federal court sits or whether the factfinder is judge or jury. M3 and Mulloy only suggest, "The theatrics of impeachment by video would have been worth the added expense for a jury, but not for a bench trial." Ibid. But the underlying premise is flawed. Impeachment by transcript can be just as devastating, at least where executed properly by skilled counsel.

Where found decisive, the asserted prejudice in this regard typically concerns extenuating circumstances, such as refusal by

a key expert witness to testify before a jury and decision by counsel to not depose at all certain witnesses in light of an expected bench trial. *Equal Employment Opportunity Commission v El Paso Natural Gas Co*, 1985 WL 152, *1 (WD Tex). Courts have also found prejudice where a plaintiff filed a Rule 39 motion less than a month before trial. See *Weidner v Nationwide Property & Casualty Insurance Co*, 2014 WL 8480457, *1 (ED Tex), affirmed, 2014 WL 8494866; *Centerboard Securities*, 2016 WL 4207985 at *2.

There's no impending trial date, and M3 and Mulloy haven't identified any witnesses they didn't depose or otherwise couldn't question before a jury. And M3 and Mulloy can, of course, bring any proper motion to reopen discovery to address their concerns in reasonable fashion, which will be accommodated.

*As to the length of delay prior to jury demand.* Solugen made a jury demand in its second amended complaint. Dkt 40. That demand came twenty-two months after its original filing and over seven months after its first amended complaint. This delay is somewhat concerning if measured from initiation of the action. But neither the parties nor the causes of action were fully set until the second amended complaint. And the counterclaims and party answers were likewise evolving over this time. The more appropriate measure of delay is thus from either the first or second amended complaints. And Rule 39 motions are often granted despite delays within that span. For example, see *Tovar v Target Corp*, 2005 WL 3447752, *2 (WD Tex) (seventeen-month delay due to inadvertence); *Dallas & Mavis Specialized Carrier Co v Pacific Motor Transportation Co*, 2008 WL 696430, *4 (ND Tex) (sixteen-month delay due to inadvertence); *Jung v 24 Hour Fitness USA, Inc*, 2018 WL 6268481, *4 (ED Tex) (fifteen-month delay from filing and twelve-month delay from removal due to inadvertence); *Herkner v Argo-Tech Corp Costa Mesa*, 2007 WL 2274406, *2 (SD Tex) (twelve-month delay due to inadvertence and confusion); *Tissue Transplant Technology, Ltd, d/b/a Bone Bank Allographs v Osteotech, Inc*, 2005 WL 2645007, *2–3 (WD Tex) (eleven-month delay due to questionable new evidence); *Etronix International, Inc v Samsung Telecommunications America, LP*, 2003 WL 21356815, *1 (ND Tex) (eight-month delay due to inadvertence); *Castaneda v*

*Mammoet USA, Inc*, 2008 WL 961924, *2 (SD Tex 2008) (seven-month delay due to assignment of new judge).

*As to the reason for delay.* M3 and Mulloy argue that Solugen hasn't provided any explanation for its delay in requesting a jury trial, and that the motion should be denied on this basis alone because the "most important" *Daniel International* factor is "whether the movant can explain its delay." Dkt 49 at 17–18. As to the latter assertion, it doesn't accurately reflect the standards. The Fifth Circuit requires consideration of each and every factor—with an eye always in favor of the right guaranteed by the Seventh Amendment. See *Bell*, 2014 WL 815382 at *2, citing *Farias*, 925 F2d at 880.

As to the former, it's true that Solugen doesn't *again* explain its reasons for delay as to its alternative motion under Rule 39. See Dkt 45 at 13. But its reasons stated under Rule 38 are quite clear that it wasn't until the operative, second amended complaint that Solugen added Mulloy, while also adding additional claims—to say nothing of the evolving nature of counterclaims and answers by M3 and Mulloy. And so, Solugen asserts that it was, first, reacting to an alleged change of position by M3 as to proper interpretation of the subject consulting agreement; second, bringing in Mulloy as a new defendant and asserting new claims against him; and third, raising a new claim against M3. Id at 7–11. That's sufficient reason.

As shown, the Seventh Amendment confers a fundamental right to trial by jury in civil matters. Yet M3 and Mulloy refer to it in passing only once in their response. Dkt 49 at 20. That's insufficient to apprehend the requisite *strong and compelling reasons* necessary to supplant such a deeply rooted right. See *Swofford*, 336 F2d at 409 (citation omitted).

The motion for jury trial will be granted.

###### 4.   Conclusion

The motion by Solugen for jury trial pursuant to Rule 39 of the Federal Rules of Civil Procedure is GRANTED. Dkt 45.

All deadlines remain STAYED pending entry of an amended scheduling order.

SO ORDERED.

Signed on March 29, 2021 at Houston, Texas.

Hon. Charles Eskridge
United States District Judge