United States District Court
Southern District of Texas
**ENTERED**
September 30, 2021
Nathan Ochsner, Clerk

# United States District Court
# Southern District of Texas
# Houston Division

| | | |
|---|---|---|
| SOLUGEN INC, | § | Civil Action No. |
| Plaintiff, | § | 4:19-cv-01658 |
| | § | |
| vs. | § | Judge Charles Eskridge |
| | § | |
| M3 CHEMICAL GROUP LLC and JAMES MULLOY, | § | |
| Defendants. | § | |

## Opinion and Order
## Granting Summary Judgment in Part

The motion by Defendants M3 Chemical Group LLC and James Mulloy for partial summary judgment is granted in part. Dkt 72. It is granted as to the claims against them by Plaintiff Solugen Inc for breach of the contract's confidentiality provisions, money had and received, and promissory estoppel. It is also granted as to the lost profits and rescission remedies. It is denied as to the claims for breach of the contract's milestones, breach of the contract's noncompete provisions, and fraudulent inducement. It is also denied as to the veil-piercing remedy. And it is denied as to Count Two of M3's amended counterclaims.

The motion by Solugen for summary judgment on the counterclaims by M3 is denied. Dkt 74.

The additional motion by Solugen for partial summary judgment on the counterclaims by M3 relating to stock options is granted in part. Dkt 75. It is granted as to the issue of dilution and specific performance. It is denied in all other respects.

1. Background

Solugen is a Houston-based chemical manufacturer. M3 is a Tennessee limited liability corporation headquartered in Nashville. Mulloy is M3's sole member.

Solugen and M3 entered into a contract titled "Consulting Agreement" in May 2018. See Dkt 40 at ¶ 15; id at pp 26–37. It required Mulloy to personally create a new biocide product and to subregister biocides from other companies. Id at pp 31–32. Section nine of the agreement also required Mulloy to disclose potential sources of conflict between himself, M3, and Solugen, and it prohibited him from taking actions in direct competition with Solugen. Id at pp 27–28. And a confidentiality agreement incorporated into the contract further restricted Mulloy's ability to compete with Solugen and imposed additional confidentiality constraints. Dkt 73-3 at 8–9.

The parties amended the contract in August 2018, but Solugen then terminated it in May 2019 after the first phase of the agreement had elapsed. Dkt 40 at ¶¶ 21, 71–72; id at pp 39–46 (amended consulting agreement). Solugen asserts that termination was warranted because Mulloy failed to meet a number of milestones within certain phases outlined in the amended contract. Dkt 40 at ¶¶ 22–44, 73–74. It also asserts that Mulloy violated section nine of the contract and section 10(b) of the incorporated confidentiality agreement. Id at ¶¶ 45–70.

The pertinent pleadings reflect an escalating cascade of claims, counterclaims, answers, and amendments.

Solugen filed its initial complaint solely against M3 in May 2019, raising claims for breach of contract and fraudulent inducement. Dkt 1. M3 answered in July 2019 and brought counterclaims for breach of contract and declaratory judgment. Dkts 15, 16. Solugen answered the counterclaims. Dkt 23.

Solugen then filed a first amended complaint in August 2019, again solely against M3. Dkt 24. That complaint reiterated the claims for breach of contract and fraudulent inducement, while adding another for declaratory judgment. M3 answered later that month and maintained its counterclaims. Dkt 26.

2

M3 then moved in March 2020 to bring amended counterclaims based on the same causes of action. Dkts 34, 36. That same day, Solugen moved for leave to file a second amended complaint and an amended answer to M3's amended counterclaims. Dkt 37. Both motions were granted. Dkts 38, 39. The amended counterclaims were deemed filed, as M3 had already docketed them. See Dkt 36. Solugen filed its second amended complaint later in March 2020. See Dkt 40. It added Mulloy as a party defendant, while also bringing additional claims. Solugen now asserts claims against both M3 and Mulloy for breach of contract, fraudulent inducement, declaratory judgment, money had and received, and promissory estoppel. Ibid. Solugen further seeks a number of remedies, including lost profits, veil piercing, and rescission. Ibid.

Solugen later filed an amended answer to M3's counterclaims. Dkt 41. But M3 again amended its counterclaims for breach of contract and declaratory judgment, to which Solugen filed another amended answer. Dkts 42, 48. And M3 and Mulloy filed a further amended answer to the second amended complaint in March 2021. Dkt 115.

M3 and Mulloy moved for partial summary judgment in September 2020 on a number of Solugen's claims and Count Two of M3's counterclaims. Dkt 72. That same day, Solugen moved for summary judgment on M3's counterclaims and separately moved for partial summary judgment on M3's counterclaims relating to stock options. Dkts 74 & 75.

  2. Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics Inc v Oregon Cardio-Devices Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby Inc*, 477 US 242, 248 (1986). And a dispute is *genuine* if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v CCC & R Tres Arboles LLC*, 736 F3d 396, 400 (5th Cir 2013), quoting *Anderson*, 477 US at 248.

The summary judgment stage doesn't involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2010), quoting *Anderson*, 477 US at 248. Disputed factual issues must be resolved in favor of the nonmoving party. *Little v Liquid Air Corp*, 37 F3d 1069, 1075 (5th Cir 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008), citing *Ballard v Burton*, 444 F3d 391, 396 (5th Cir 2006).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015) (quotation omitted); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986) (citations omitted). But when a motion for summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536 (quotation omitted). To meet this burden of proof, the evidence must be both "competent and admissible at trial." *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012) (citation omitted).

### 3. Motion for partial summary judgment by M3 and Mulloy

M3 and Mulloy move for summary judgment on the claims against them for breach of contract, fraudulent inducement, money had and received, and promissory estoppel. They also move for summary judgment on Count Two of M3's counterclaims. And they move for summary judgment on a number of remedies sought by Solugen. Dkt 72.

#### a. Breach of contract as to the milestones

Solugen contends that Mulloy and M3 breached the amended consulting agreement by "failing to meet the Milestones" and by "abandoning their obligations thereunder." Dkt 40 at ¶ 81. And as part of its counterclaims, M3 seeks a declaratory judgment that it fulfilled all of those milestones.

Dkt 42 at ¶¶ 112–116. M3 and Mulloy now seek summary judgment on these claims. Dkt 72 at 15–19.

The first milestone of Phase 1 of the agreement required M3 to create a product line "utilizing hydrogen peroxide and unique EPA registered biocides." Dkt 40 at 42 (amended consulting agreement, Exhibit A). M3 and Mulloy insist that they achieved this milestone because they successfully created Solugen's BioSol product line, which consists of hydrogen peroxide and unique EPA-registered biocides. Dkt 72 at 17–18; Dkt 73-1 at 5 (Mulloy declaration); Dkt 73-10 at 15–16, 35 (Chakrabarti deposition). M3 and Mulloy further reason that they satisfied the remaining milestones because the biocides portion of the BioSol product line generated nearly $3.2 million in revenue in 2019. Dkt 72 at 18–19; Dkt 73-15 at 12 (Lovin expert report).

Solugen argues that the BioSol product line wasn't a unique EPA registered biocide. Dkt 94 at 15–17. It also asserts, "M3's interpretation would gut Phase 1 Milestone 1 entirely, because it transforms the work required into nothing more than developing 'commercial ready products,' which was the work of Pre-Phase 1." Id at 17; Dkt 40 at 42 (amended consulting agreement, exhibit A). Instead, Solugen contends that sub-registered biocides (like the BioSol product line) are legally required *not* to be unique. Dkt 94 at 18–19, citing 40 CFR § 152.132. Solugen also emphasizes emails from the parties' negotiations during March and April of 2018 to establish that "'generic EPA registered biocides' were in a category separate and apart from 'unique EPA registered biocides,' and that a product did *not* become a 'unique EPA registered biocide' simply by virtue of being given a brand name." Dkt 94 at 20; Dkts 94-5 & 94-9 (Mulloy emails to Chakrabarti and Hunt). Additionally, Solugen insists that M3 didn't achieve the first milestone of Phase 1 because it didn't introduce hydrogen peroxide to any of its product lines. Dkt 94 at 21; Dkt 94-3 at 4 (Hunt declaration); Dkt 73-1 at 16 (Mulloy declaration).

Genuine disputes of material fact exist as to what the first milestone of Phase 1 required and whether M3 and Mulloy achieved it. As such, summary judgment isn't appropriate on

5

Solugen's breach of contract claim or on Count Two of M3's counterclaims.

>
> b. Breach of contract as to the noncompete and confidentiality provisions

Solugen contends that Mulloy maintained various relationships with competitors that violated the noncompete provision in section 9 of the contract and in section 10(b) of the incorporated confidentiality agreement. It also alleges that Mulloy and M3 violated their duty of confidentiality imposed by these sections.

*First*, Solugen claims that "Mulloy entered [into] a Letter of Understanding with Aquaserv," thereby breaching the noncompete provisions within the consulting and confidentiality agreements. Dkt 40 at ¶¶ 68–70. M3 and Mulloy argue that summary judgment is warranted because there's no evidence that either of them "provided consulting or other services to Aquaserv." Dkt 72 at 20. They instead maintain that "Aquaserv sent Mulloy a draft letter of understanding, Mulloy never signed it, and neither M3 nor Mulloy received any compensation of any kind from Aquaserv." Ibid; Dkt 73-1 at 8 (Mulloy declaration). It is apparently undisputed that Mulloy didn't sign the letter of understanding. But evidence nonetheless exists that he encouraged Solugen to purchase components from Aquaserv, necessarily benefitting Aquaserv. Dkt 96-1 at 32–33 (Mulloy deposition). As such, a genuine dispute of material fact exists as to whether Mulloy violated the noncompete provisions.

*Second*, Solugen contends that Mulloy's relationship with eScience Labs breached the noncompete provisions because he thereby provided services to a competitor *and* restricted M3's ability to perform for Solugen. Dkt 40 at ¶¶ 61–65. M3 and Mulloy argue (without pointing to evidence) that summary judgment is warranted as to this claim because eScience Labs doesn't compete with M3 and no evidence establishes that Mulloy's agreement with eScience Labs restricted M3's ability to perform for Solugen. Dkt 72 at 20–23. To the contrary, Mulloy's Linked-In page indicates that he became the chief operating officer of eScience Labs in October 2018 while the consulting agreement was in effect. Dkt 94-7 at 2. He also signed an

6

agreement with eScience Labs that required him to devote his "full work time" exclusively to it. Dkt 96-2 at 5. And there's no evidence that Mulloy ever informed Solugen of his role or specific agreement with eScience Labs. As such, a genuine dispute of material fact exists as to whether Mulloy's relationship with eScience Labs violated the noncompete provisions.

*Third*, Solugen claims that M3 breached the noncompete provisions due to Mulloy's relationship with Nashville Chemical. Dkt 40 at ¶¶ 45–55. M3 and Mulloy argue that summary judgment is warranted because "the uncontroverted evidence is that neither M3 nor Mulloy provided any consulting or other services to Nashville Chemical during the relevant time period." Dkt 72 at 23; Dkt 73-1 at 9 (Mulloy declaration). M3 emphasizes that it "solicited and made sales for Solugen's benefit to customers of Nashville Chemical." Id at ¶¶ 36. But whether M3 or Mulloy did *some* things that benefitted Solugen isn't relevant. Mulloy concedes that he received "around a million dollars" for his interest in Nashville Chemical following a sale in September 2018. See Dkt 96-1 at 21 (Mulloy deposition). As part of that sale, he signed a shareholder consent agreement with Nashville Chemical. Id at 30–31. When asked what that consent required, Mulloy replied, "I really don't know . . . I really didn't give a damn." Id at 31. But Mulloy acknowledged that he knew Nashville Chemical would be sold and that he couldn't disclose that information. Id at 30. As such, a genuine dispute of material fact exists as to whether Mulloy's agreement with Nashville Chemical restricted his ability to perform for Solugen and thereby violated the noncompete provisions.

In addition to breach of the noncompete provisions, Solugen alleges that M3 (along with Mulloy) breached the confidentiality agreement imposed by section 9 of the contract and section 10(b) of the incorporated confidentiality agreement. Dkt 40 at ¶ 81. M3 and Mulloy respond that summary judgment is warranted because neither improperly disclosed any of Solugen's confidential information. Dkt 72 at 24; Dkt 73-1 at 11 (Mulloy declaration). Solugen doesn't meaningfully address this argument in its response. As such, no genuine dispute of material fact exists as to whether M3 breached any of the confidentiality provisions.

7

In sum, M3 and Mulloy aren't entitled to summary judgment on Solugen's claims for breach of the noncompete provisions. But they are entitled to summary judgment on the claim that Mulloy and M3 breached the confidentiality provisions because there's no genuine dispute of material fact in that regard.

c. Fraudulent inducement

Solugen alleges that M3 and Mulloy made a number of misrepresentations and brings a fraudulent inducement claim in that regard.

"Fraudulent inducement 'is a particular species of fraud that arises only in the context of a contract, and the elements of fraud must be established as they relate to an agreement between the parties.'" *ENGlobal US Inc v Native American Services Corp*, 2018 WL 1877015, *2 (SD Tex), quoting *West v Northstar Finance Corp*, 2010 WL 851415, *5 (Tex App—Ft Worth, pet denied). "Although fraudulent inducement has the same elements as common-law fraud, it must also involve 'a promise of future performance made with no intention of performing at the time it was made.'" Ibid, quoting *Zorrilla v Aypco Construction II LLC*, 469 SW3d 143, 153 (Tex 2015).

*First,* Solugen claims that M3 and Mulloy didn't disclose his affiliation with eScience Labs and falsely stated that he was only doing "*de minimis*" work for the company. Dkt 40 at ¶¶ 57–58. M3 and Mulloy argue that summary judgment is warranted because Mulloy did disclose his work with eScience Labs and that his work for it was *de minimis*. Dkt 73-10 at 38–41 (Chakrabarti deposition); Dkt 73-1 at 7 (Mulloy declaration). But Mulloy signed the amended consulting agreement just days before becoming the CEO of eScience Labs. Dkt 40 at 41 (signature page of amended consulting agreement); Dkt 94-7 at 2 (Mulloy Linked-In page). He also agreed to devote his "full work time" to eScience Labs, moved to Colorado, and stopped communicating with the owner of the laboratory that had been performing screening tests for the new Solugen biocide. Dkt 96-2 at 5 (eScience Labs confidentiality agreement); Dkt 94-7 at 2 (Mulloy Linked-In page); Dkt 96-3 at 6–7 (Martin deposition).

*Second,* Solugen claims that M3 and Mulloy defrauded it by allegedly promising that Mulloy had "severed all ties with

8

Nashville Chemical, and did not have any shareholder or other interest in the company." Dkt 40 at ¶ 47. M3 and Mulloy argue that summary judgment is warranted because Solugen wasn't justified in relying on M3's oral promises as to Mulloy's interest in Nashville Chemical. Specifically, they assert that the written contract contains the entirety of the agreed upon terms. Dkt 72 at 25–26. And they argue that it's undisputed that Mulloy's ownership interest in Nashville Chemical didn't violate any of those terms. Id at 26–27. But Texas law only precludes reliance where the fraudulent representation *contradicts* a term of the agreement. For example, see *Correll v Hartman*, 2017 WL 3910762, \*9 (Tex App—Houston [1st Dist], pet denied). Here, nothing in the contract contradicts M3's representations as to Nashville Chemical. As such, it's not clear that Solugen was unjustified in relying on such representations.

*Third,* Solugen claims that M3 and Mulloy fraudulently induced it to enter into the consulting agreement by representing that "Mulloy had the qualifications, experience, and ability to develop and sell the Next Generation biocide." Dkt 40 at ¶ 76. M3 and Mulloy again argue that any reliance by Solugen wasn't justified because "a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms." Dkt 72 at 27. Summary judgment is thus warranted, they suggest, because the agreement doesn't mention a "Next Generation biocide." Dkt 72 at 27; Dkt 40 at 42 (amended consulting agreement, Exhibit A). But the name of the "product line utilizing hydrogen peroxide and unique EPA-registered biocides" is entirely beside the point. What's at issue is whether Mulloy falsely represented that he "had the qualifications, experience, and ability to develop" such a product. Dkt 40 at ¶ 76. And there's a genuine dispute of material fact as to that issue.

*Fourth,* Solugen claims that M3 and Mulloy fraudulently induced it to enter into the consulting agreement by falsely representing that they "intended to perform the required services." Dkt 40 at ¶ 76. M3 and Mulloy argue that summary judgment is warranted because "there is no evidence that M3 never intended to perform under the agreement." Dkt 72 at 28.

9

To the contrary, and as discussed above, there are genuine disputes of material fact as to whether M3 and Mulloy intended to fully perform under the amended contract at the time they signed it.

Numerous genuine disputes of material fact exist as to Solugen's fraudulent inducement claim. As such, M3 and Mulloy aren't entitled to summary judgment on it.

### d. Money had and received

Solugen alleges that "Mulloy personally holds the ill-gotten gains and the money that M3 (and he) received as a result of M3's breaches of contract and fraud." Dkt 40 at ¶ 93. M3 and Mulloy argue that summary judgment is warranted on this claim because Mulloy doesn't hold any money that M3 received from Solugen, other than the minimum amount necessary to pay federal income taxes on those funds. Dkts 72 at 28–29; 73-1 at 10–11 (Mulloy declaration). Further, even though Mulloy owns 118,951 shares of Solugen stock, he didn't obtain those shares through M3, and the stock isn't "money." Dkts 72 at 29; 73-1 at 11.

Solugen responds that summary judgment would be "premature" because it hasn't received adequate discovery. Dkt 94 at 34. That is entirely unavailing because discovery in this action closed in August 2020. Dkt 60.

Solugen also argues that summary judgment is inappropriate because "it is entirely possible, even likely, that some of the money Mulloy transferred to himself from M3 came from money received from Solugen." Ibid. But it offers no supporting evidence for this claim. On the contrary, Mulloy specifically averred that he hasn't received any money from M3 that originated with Solugen other than what was used to pay taxes. Dkt 73-1 at 10–11 (Mulloy declaration). As such, there's no genuine dispute of material fact that Mulloy personally holds any money that M3 received under the consulting agreement.

M3 and Mulloy are entitled to summary judgment on Solugen's claim for money had and received.

### e. Promissory estoppel

Solugen alleges that Mulloy promised to "personally conduct the services required by the Phases and Milestones in the

10

Consulting Contract" and that, in exchange, Solugen awarded him a stock option. Dkt 40 at ¶¶ at 19, 98–99. It brings a claim for promissory estoppel on that basis. M3 and Mulloy argue that summary judgment is warranted on this claim because Mulloy *did* personally conduct the services as defined in the consulting agreement and because the claim is otherwise barred as a matter of law by the statute of frauds, the consulting agreement's merger clause, and the parol evidence rule. Dkt 72 at 29–32; Dkt 73-1 at 5 (Mulloy declaration); Dkt 40 at 28 (merger clause), 42 (amended consulting agreement, exhibit A).

When "a valid contract between the parties covers the alleged promise, promissory estoppel is not applicable to that promise. Instead, the wronged party must seek damages under the contract." *El Paso Healthcare System Ltd v Piping Rock Corp*, 939 SW2d 695, 699 (Tex App—El Paso 1997, writ denied). But promissory estoppel does "apply to promises made outside the contract." *M & DD Traders Corp v Total Quality Logistics Inc*, 2012 WL 6196456, *3 (Tex App—Fort Worth, no pet).

Promissory estoppel also "requires that the agreement that is the subject of the promise must comply with the statute of frauds." *Germain v US Bank National Association*, 2018 WL 1517860, *8 (ND Tex), quoting *Sullivan v Leor Energy LLC*, 600 F3d 542, 549 (5th Cir 2010) (quotation marks omitted). That statute provides that "an agreement which is not to be performed within one year from the making of the agreement is not enforceable unless it is in writing and signed by the person to be charged with the agreement." *Fuller v Wholesale Electric Supply Co of Houston Inc*, 2020 WL 1528041, *4 (Tex App—Houston [14th Dist], pet filed), quoting Tex Business & Commerce Code Ann § 26.01(a), (b)(6) (quotation marks omitted). And an agreement isn't "signed by the person to be charged if the defendant signed the agreement in one capacity and is charged with it in another capacity." *Virani v Cunningham*, 2012 WL 355653, *4 (Tex App—Houston [14th Dist], pet denied) (quotation marks omitted); *FCLT Loans LP v Estate of Bracher*, 93 SW3d 469, 477 (Tex App—Houston [14th Dist] 2002, no pet).

Solugen hasn't identified any document signed by or oral promise made by Mulloy in his *personal capacity*. As such, and based

11

on that lack of evidence alone, Solugen has failed to raise a genuine dispute of material fact as to its promissory estoppel claim against Mulloy.

But the claim is also barred by the statute of frauds, as activity prior to Phase 1 began in May 2018 and Phase 3 didn't begin until May 2020. Dkt 40 at 31–32 (consulting agreement, Exhibit A). Solugen fails to explain how the agreement could have been performed within a year and thus fall outside the statute of frauds.

M3 and Mulloy are therefore entitled to summary judgment on Solugen's promissory estoppel claim.

### f. Lost profits

Solugen seeks lost profit on allegation that it "has lost time to enter into [various] markets..., associated business opportunities, and lost sales." Dkt 40 at ¶ 83. M3 and Mulloy argue that summary judgment is warranted because Solugen has no evidence that any alleged lost profits were reasonably certain, as required by Texas law. Dkt 72 at 32–33, citing *Kellmann v Workstation Integrations Inc*, 332 SW3d 679, 684 (Tex App—Houston [14th Dist] 2010, no pet). Solugen didn't respond to this argument and thus waived any opposition. See Rule 7.4, Local Rules of the United States District Court for the Southern District of Texas.

M3 and Mulloy are entitled to summary judgment on Solugen's request for lost profits.

### g. Veil piercing

Solugen seeks to pierce M3's corporate veil, contending that M3 is Mulloy's "alter ego" and that Mulloy personally holds "all of the ill-gotten gains" that M3 received from its conduct. Dkt 40 at ¶ 88–90. M3 and Mulloy argue (among other reasons) that summary judgment is warranted because M3 hasn't distributed to Mulloy any funds from Solugen, M3 and Mulloy haven't commingled funds, and M3 had income separate and apart from Solugen. Dkt 72 at 33–34; Dkt 73-1 at 11 (Mulloy declaration).

M3 is a Tennessee company. The parties agree that Tennessee law determines whether Solugen is allowed to pierce M3's corporate veil. Dkt 72 at 33; Dkt 95 at 35. Tennessee law presumes that corporations are distinct legal entities, wholly

separate from their officers, directors, and shareholders. *Schlater v Haynie*, 833 SW2d 919, 925 (Tenn Ct App 1991). But in appropriate cases, and "in furtherance of the ends of justice, the separate identity of the corporation may be discarded and the individual or individuals owning all its stock and assets will be treated as identical to the corporation." *VP Buildings Inc v Polygon Group Inc*, 2002 WL 15634, \*4 (Tenn Ct App).

Tennessee courts thus may pierce the corporate veil and disregard the corporate entity upon a showing that the corporation is a "sham" or "dummy" organization, or if it's necessary to accomplish justice. *Muroll Gesellschaft MBH v Tennessee Tape Inc*, 908 SW2d 211, 213 (Tenn Ct App 1995). This principle is to be applied with "great caution," with the party seeking to pierce the corporate veil bearing the burden of proof. *Schlater*, 833 SW2d at 925.

Usually, "a combination of factors is present in a particular case and is relied upon to resolve the issue." Ibid. These factors include:

> (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; (11) the failure to maintain arm's length relationships among entities.

*Federal Deposit Insurance Corp v Allen*, 584 F Supp 386, 397 (ED Tenn 1984) (citations omitted).

Neither side has offered sufficient evidence to consider many of the factors identified above. But Solugen does provide evidence that, as of December 2019, M3 had only $4,636.16 in its accounts. Dkt 94-10 (M3's 2019 profit and loss statement). While not dispositive, this evidence certainly raises questions about where the funds M3 received from Solugen went—and whether they are being diverted to Mulloy (or to some other person or entity). It also suggests that it may be grossly undercapitalized. As such, a genuine dispute of material fact exists as to whether it's appropriate to pierce M3's corporate veil.

M3 and Mulloy aren't entitled to summary judgment on Solugen's request to pierce M3's corporate veil.

### h. Rescission

Solugen seeks to rescind the consulting agreement in its entirety. Dkt 40 at ¶¶ 79, 86. M3 and Mulloy argue that summary judgment is warranted because Solugen has waived any ability to rescind the agreement in full by receiving and retaining the benefits of M3's performance. Dkt 72 at 34–35; Dkt 73-10 at 32 (Chakrabarti deposition); Dkt 73-11 at 19–20 (Hunt deposition); Dkt 73-15 at 12 (Lovin expert report).

"Rescission of a contract is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate." *Omega Energy Corp v Gulf States Petroleum Corp*, 2005 WL 977573, *3 (Tex App—Corpus Christi, pet denied) (citation omitted). "A plaintiff requesting rescission has the burden to prove that she is deserving of equitable relief and that there is no adequate remedy at law." Ibid, citing *Frost Bank v Burge*, 29 SW3d 580, 596 (Tex App—Houston [14th Dist] 2000, no pet). "A trial court must weigh several factors to determine if rescission should be granted, including probability of irreparable damage to the moving party, possibility of harm to the nonmoving party, and public interest." Ibid, citing *Davis v Estridge*, 85 SW3d 308, 310 (Tex App—Tyler 2001, pet denied). But courts generally don't "enforce contractual rights in equity, because a party can rarely establish an irreparable injury and an inadequate legal remedy when damages for breach of contract are

available." Ibid, citing *Butnaru v Ford Motor Co*, 84 SW3d 198, 211 (Tex 2005). The right of rescission is also "waived by the injured party's retention of the partial performance rendered by the breaching party." *Carter v PeopleAnswers Inc*, 312 SW3d 308, 312 (Tex App—Dallas 2010, no pet) (citation omitted).

Solugen's response devotes only a single paragraph to rescission. Dkt 94 at 36. And that paragraph doesn't identify any evidence relating to the factors that Texas courts consider when evaluating requests for rescission. Neither does Solugen explain why it deserves equitable relief separate and apart from the relief it seeks based on its breach of contract claim. As such, there's no genuine dispute of material fact as to whether Solugen is entitled to rescind the consulting agreement.

M3 and Mulloy are entitled to summary judgment on Solugen's request for rescission.

> 4. Motion by Solugen for summary judgment

M3 brings a counterclaim against Solugen for breach of contract. Dkt 36 at ¶¶ 108–111. It also seeks a declaratory judgment to establish that it has "fulfilled all of the Milestones for Phases 1–3 of the Agreement." Id at ¶¶ 112–116. It alternatively seeks a declaratory judgment that it has "fulfilled all of the Milestones of Phase 1 of the Agreement." Id at ¶¶ 117–121. And it seeks attorney fees and costs. Id at ¶¶ 122.

Solugen moves for summary judgment on all of M3's counterclaims. Dkt 74. It reiterates the same arguments from its response to the motion by M3 and Mulloy for partial summary judgment. See Dkts 74 & 94.

As to the breach of contract counterclaim, the motion brought by Solugen for summary judgment falters on the same grounds as that brought by M3 and Mulloy. Specifically, there are genuine disputes of material fact as to what the first milestone of Phase 1 actually required M3 to achieve and whether M3 achieved it. So, like M3 and Mulloy, Solugen isn't entitled to judgment on its respective breach-of-contract claims.

The counterclaims for declaratory relief implicate the same fact issues, making summary judgment similarly inappropriate.

15

The motion by Solugen for summary judgment will be denied. Dkt 74.

>    5.   Motion by Solugen for partial summary judgment

The parties' consulting agreement entitled M3 to certain compensation that included an option to purchase 475,804 shares of Solugen stock. As to the option, 25% vested immediately, and the remaining 75% was to be divided equally among option shares connected to each of the three phases. Those options were scheduled to vest in twelve equal monthly increments from May 2018 to April 2021 if M3 proceeded to fulfill the milestones. See Dkt 40 at 44–46 (amended consulting agreement, exhibit B).

Mulloy exercised the first 25% of the option in October 2018, and Solugen granted him 1.25% of its fully diluted capitalization. Dkt 42 at ¶ 47. M3 claims that it fulfilled its obligations under the consulting agreement, meaning that it "has a vested contractual right to immediately exercise its stock options and purchase an additional 3.75% of Solugen's fully diluted capitalization." Id at ¶ 2, 114. And it seeks a declaration affirming that contention. Id at ¶ 112–16.

Solugen moves for partial summary judgment on three aspects of this counterclaim. Dkt 75.

*As to dilution.* Solugen argues that M3 isn't entitled to a specific percentage of its common stock because the option contains no anti-dilution rights. Id at 12–14. Solugen observes that stockholders generally aren't protected from the dilutive effects of future recapitalization, financing, and other transactions under Texas law unless the corporation's certificate of formation provides otherwise. Id at 12; see Tex Business Organizations Code Ann § 21.203(a). Solugen further emphasizes that its certificate of formation doesn't grant holders of common stock (like M3) preemptive or anti-dilution rights. Dkt 75 at 13; Dkt 79-4 at 17–21. And it highlights that neither the consulting agreement nor the notice of stock grant provides otherwise. Dkt 75 at 13–14; Dkt 75-1 at 19–20 (amended consulting agreement, Exhibit B); Dkt 79-1 at 6–13 (notice of stock option grant to Mulloy).

M3 and Mulloy don't respond to this argument and so waived any opposition. See Dkt 90; Local Rule 7.4. As such,

16

there's no genuine dispute of material fact that any rights M3 has under its option to purchase Solugen stock are subject to dilution. Solugen is thus entitled to summary judgment as to that aspect of M3's counterclaim for declaratory relief.

*As to the forfeiture of shares under Phase 2 and Phase 3 of the stock option agreement.* Because M3 allegedly ceased performing under the consulting agreement before the Phase 2 and Phase 3 option-vesting dates, Solugen argues that those shares didn't and couldn't vest. Dkt 75 at 14–18. But again, genuine disputes of material fact exist as to whether M3 met its obligations under the consulting agreement. These factual issues also preclude determining whether the shares under Phase 2 and Phase 3 of the stock option agreement vested. As such, Solugen isn't entitled to summary judgment as to that aspect of M3's counterclaim for declaratory relief.

*As to whether M3 is entitled to specific performance.* Solugen characterizes M3's counterclaim as seeking specific performance of the issuance of additional Solugen shares to M3. Dkt 75 at 6. Solugen argues that M3 is at most entitled to compensatory damages. Id at 18–20. M3 asserts that neither it nor Mulloy are "seeking specific performance but rather a declaratory judgment that the Option remains in effect, and the law is clear that the existence of an adequate remedy at law is irrelevant for declaratory judgments." Dkt 90 at 15.

M3's disavowal will be treated as a statement of no opposition to Solugen's motion for summary judgment as to specific performance of the issuance of additional Solugen shares to M3. Summary judgment will be entered on this aspect of M3's counterclaim to the extent (if any) it was asserted.

### 6. Conclusion

The motion by Defendants M3 Chemical Group LLC and James Mulloy for partial summary judgment is GRANTED IN PART and DENIED IN PART. Dkt 72. It is GRANTED as to the claims for breach of the contract's confidentiality provisions, money had and received, and promissory estoppel. It is also GRANTED as to the remedies of lost profits and rescission. It is DENIED as to the claims for breach of the contract's milestones, breach of the contract's noncompete provisions, and fraudulent inducement. It

is also DENIED as to the veil-piercing remedy. And it is DENIED as to Count Two of M3's amended counterclaims.

The motion by Plaintiff Solugen Inc for summary judgment on the counterclaims by M3 is DENIED. Dkt 74.

The motion by Solugen for partial summary judgment on the counterclaims by M3 relating to stock options is GRANTED IN PART and DENIED IN PART. Dkt 75. It is GRANTED as to the issue of dilution and specific performance. It is DENIED in all other respects.

SO ORDERED.

Signed on September 30, 2021, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge